## McGONEGAL vs. WALKER.

1. To sustain the action for forcible entry and detainer, the plaintiff must show that defendant has forcibly entered his premises, and that he actually detains the possession either by himself in person or by another to whom, after obtaining it by force, he has delivered it to be kept for him; and the fact that the person to whom he delivers the possession had been his tenant before the premises went into the posesssion of the plaintiff, makes no difference.
2. An error in favor of the appellant forms no ground of reversal.
3. The bare removal of plaintiff's fence, if defendant enters peaceably, would not convert his entry or detainer into a forcible one.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. LYMAN GIBBONS.

THIS was an action of forcible entry and detainer, brought by Walker against McGonegal, to regain possession of certain premises described in the complaint, situated in the city of Mobile. The plaintiff, proving unsuccessful before the justice, took the case before the Circuit Court by *certiorari*, in which he obtained a verdict and judgment in his favor.

Upon the trial a bill of exceptions was sealed, by which it appears that the plaintiff introduced one James Murphy, who testified that, while the plaintiff was erecting a fence between his lot and the lot of the defendant, the said defendant came with a party of men, and after using threatening language to the plaintiff, swearing that he would have possession of the lot, and that if he were to serve the plaintiff right, he would split his head, then pulled up the posts and tore down the fence which the plaintiff had erected, and moved the fence so as to take about 16 feet in width by 140 in depth of plaintiff's lot; that at the time of using the threatening language the defendant had an axe in his hand. He also testified that one Blackhall was, and for some time had been, in possession of the lot claimed by the defendant.

Maurice Murphy, another witness, stated that previous to the difficulty there had been an old fence dividing the lots claimed respectively by the parties. The old fence run back from the front about 120 feet, the depth of the lots being about 140 feet;

43

said fence was very much dilapidated, so that passage could easily be had through it. This witness was present when the defendant came and tore down the new fence, removed the posts &c. to near the line of the old fence, but within such line so as to include two or three feet of the plaintiff's lot between the line of the new fence and the old.

Mrs. James Murphy testified, that she was in the house on plaintiff's lot when defendant and his party came; that the plaintiff had lived in the house some two months; that previous to that time, one Mrs. Cotton had resided there as tenant, but had attorned to the plaintiff; that when the defendant came his language was violent; that he pulled up the plaintiff's fence, and re-constructed it on a different line, and in so doing had taken some sixteen feet of the plaintiff's lot.

Patrick Byrne testified, that the plaintiff had been at work in erecting the fence some two weeks before the defendant came and tore it down; that the plaintiff had completed about 100 feet thereof.

One Flanery testified, that he, with the plaintiff, defendant and other proprietors of adjacent lots, agreed to employ a surveyor to run off the lines of the respective lots, so that each might know where to put his fence; that the several parties interested had deposited money in his hands to employ such surveyor; that he employed one Dean Knox, the city surveyor, who, in the presence of the parties to this suit, and previous to the controversy, surveyed the same, and the line then run between the plaintiff and defendant's lots was that on which the plaintiff was erecting his fence; and that the line on which defendant placed the fence after taking it up, enclosed some 16 feet of the plaintiff's lot, as surveyed by said Knox. Knox was also examined, and sustains Flanery; says the line he run was according to instructions given and descriptions furnished, and that he run the line between the lots of these parties at their request.

One Dalton testified, that Blackhall was in possession of defendant's lot, as his tenant, but never had all the lot as now embraced by the fence; that, in removing the fence, the defendant took two or three feet more than was embraced by the old fence, to which Blackhall previously claimed.

Joshua Kennedy proved, that he had owned both lots, and had sold them to the parties; that the sale to the plaintiff was

prior to that made to the defendant; that the lot of plaintiff, at the time of sale, was occupied by Mrs. Cotton, who was told to attorn to the plaintiff, and who did attorn.

The plaintiff here rested his case.

The defendant then proved by one Blackhall, that he, the witness, had been in possession of a part of the lot in controversy for about fifteen months; that he first rented from Kennedy, and after occupying some time was informed by him that he had sold to McGonegal, and he attorned to the latter; that he has since held the possession as McGonegal's tenant; that some days after the lines were run by Knox, the plaintiff, Walker, informed witness that he intended to tear down the fence that divided said lots, and to run it according to the line as surveyed; this the witness communicated to the defendant, who caused a written notice to be served upon the plaintiff, forbidding his doing so; that soon after this, the plaintiff tore down the old fence, and part of a stable situate on the premises which the witness had in his possession, and began to construct the fence on the line run by Knox; that the defendant, in company with three persons, came to the place while the plaintiff was building the fence—pulled up the posts, and put them over on plaintiff's lot, and re-constructed the fence where the old one had run; that the fence run one hundred and twenty feet, the lot being one hundred and forty feet deep; that after the plaintiff removed the fence, witness lost possession of a portion of his lot, but when the defendant re-constructed the fence on the old line, he regained possession and has ever since held it.

Another witness testified, that he went upon the ground when defendant pulled up the posts, and that said defendant used no violent language or violence upon the occasion.

It was also proved by Muchi and McVatal, that they went with McGonegal when he took possession; that he used no threats or harsh language to the plaintiff or any one else; that when the defendant got upon the ground, Walker was at work, putting up the posts; McGonegal said to him in a quiet manner, "You are busy at work; it is useless for you to put that fence up, for I am going to take them posts up and put them over on your own ground. You have already been notified not to touch the fence, that I was in the peaceable possession of this ground, claiming title to the same;" that Walker replied, "Very well,

that is all I want you to do. I will see further about it," and then walked off and left the premises. They also state that McGonegal had no weapons.

The circuit judge charged the jury, that if the parties to the suit were proprietors of adjoining lots, between which the piece of land in dispute was situated, and that the boundary line between said lots was undefined, and the ground upon the line was used as common property by the mutual proprietors, and they agreed to call upon a surveyor to give them their lines in order to fix the exclusive possession of each, and that those lines, so to be ascertained, should determine the exclusive possession of each, and that if, in pursuance of such agreement, a survey was had, and that the plaintiff had gone into the exclusive possession of the ground now in dispute according to the line ascertained by said survey, and being so in possession, the defendant entered upon him and turned him forcibly out of possession, then the defendant was guilty; but if, on the other hand, the possession of the tenants holding the said lots prior to the purchase by plaintiff and defendant from Kennedy, was one well defined by a fixed boundary line, and that the plaintiff and defendant took the possession of the property as it existed with the tenants at the time of their purchase, and that the possession exists now as it existed in the tenants occupying the premises before them, then the defendant is not guilty.

2. The court charged the jury further, that if the possessions of Mrs. Cotton and Blackhall were fixed by a definite line, then neither the plaintiff nor defendant had a right forcibly to disturb the possession of the other, and if he did he would be a trespasser; that if Walker, in building his fence, violated the possession of Blackhall, the tenant of McGonegal, the latter had a right to stop the trespass by force, even before it was consummated, and restore the old lines, and if the defendant did this only, he was not guilty. On the other hand, if the new fence put up by the defendant was not upon the old line, but encroached upon the plaintiff's lot, then the defendant was guilty to the extent of that encroachment.

3. That if the plaintiff, under the evidence and the law as above given in charge, was entitled to the possession of the premises in dispute, or any part of them, then the moving of the plaintiff's fence in the manner shown by the proof was suf-

ficient force to maintain the action ; but, on the other hand, if the defendant was entitled to the possession, the removing of the plaintiff's fence by the defendant as shown in proof, was justifiable as repelling a trespass not then consummated.

4. The defendant's counsel asked the court to charge the jury, that if they believed Blackhall was in the possession of said lot of defendant, prior to his purchase from Kennedy, and that said Blackhall attorned to defendant upon said purchase, and that defendant was not otherwise in possession of said premises, then, although they should find that the defendant, as landlord of said tenant, had forcibly entered and ejected said plaintiff, yet, if he immediately gave up the possession thereof to his tenant, who has held the same ever since, the action should have been against Blackhall, the tenant in possession, and will not lie against the defendant.   This charge the court refused to give, and instructed the jury that, under the evidence, the action was against the proper party.

To the several charges given, and to the refusal of the court to charge as requested, the counsel for the defendant excepted, and here assigns the same for error.

WM. BOYLES, for plaintiff in error :

The action is founded on the statute in Clay's Digest 250 § 2.   The evidence shows that McGonegal had not the possession, nor the right of possession ; the lot was held by his tenant, and that, too, under a contract of lease entered into long before his entry, and then not ended.   It was held by said tenant, who had the actual possession, at the time of demand made, and at the time suit was brought.   To constitute the offence of forcible entry and detainer, there must be a detainer, as well as an entry.   The action is merely for the possession, and cannot be maintained against any one who has not the actual possession.—6 J. J. Marsh. 602 ; 3 A. K. Marsh. 128 ; 3 Halstead 48 ; 5 Gilman 218 ; 2 Dana 245 ; 9 Ala. R. 509.

Though the possession of the tenant is, in contemplation of law, the possession of his landlord, yet the tenant alone, during his exclusive tenure, is actually possessed : he alone can sue in trespass, for an intrusion on the possession, and consequently would be entitled to the restitution of possession after disseizin, and the landlord could not maintain the warrant in his own

name.—6 J. J. Marsh. 602. It follows necessarily that the action cannot be maintained against one, when another has the actual possession. If McGonegal had held the actual possession at the time of demand made, or suit brought, and afterwards his tenant had taken possession before a writ of restitution issued, then the sheriff could have legally turned him out, but not otherwise.—2 Bay's R. 355. McGonegal was, at most, but a trespasser, and might have been so treated.

The first charge is not predicated upon the evidence. It assumes, in effect, that there was no defined line between said lots, when, in point of fact, all the witnesses who spoke of the old fence say, that it extended back 120 feet, and that Blackhall, the tenant, had and held the possession to said fence, until it was torn down by Walker; and Blackhall testified, that it was the recognized line between said lots. Another objection to the charge is, that, in effect, it asserts that, if A enters upon B's premises, and forcibly turns him out of possession, he is guilty of a forcible entry *and detainer*, though he does not hold the possession for a moment, but walks off immediately and remains away.—See 2 Douglass' R. 368, 372; 1 Caine's R. 125; Clay's Digest 250 § 2.

The third charge refers to the jury the decision of a question of law.—3 Ala. R. 237. There was a conflict in the evidence, in regard to the manner of removing the posts by McGonegal; yet the court charged, that the removal of the posts, in the manner shown by the proof, was sufficient force to maintain the action. Would it have been sufficient, supposing the evidence adduced by the defendant to be true?

The charge asked by defendant's counsel should have been given.—5 Gilman's R. 218; 2 Doug. R. 368; *ib.* 372.

The case of Matlock v. Thompson, 18 Ala. R. 600, and the authorities there cited, have no application to this case; that action was founded on the act of 1848, for a forcible and unlawful detainer.

PERCY WALKER, *contra:*

The record shows that, when the proceeding before the magistrate was instituted, McGonegal held the lot in his own possession. These proceedings were read on the trial below, and are made part of the bill of exceptions. In addition to this, the

testimony adduced by the plaintiff below shows, that McGonegal forcibly entered on the premises, and detained them. The testimony of Blackhall shows, that McGonegal treated the possession as his own. The evidence must be regarded as establishing the fact that McGonegal forcibly entered the premises; and his refusal to surrender, upon demand, must be held to constitute a forcible detainer under the statute. It is admitted that, when the entry is peaceable, the mere refusal to surrender on demand will not constitute a forcible detainer; but, it is insisted, that such refusal, after an entry with force, will maintain the action. After such an entry, the bare retention of possession will be a retainer.—5 Gilman 222. The refusal to surrender, after the circumstances of the entry, tended to excite terror in the plaintiff, and prevent him from maintaining his rights.—10 Mass. 403.

The reconstruction of the fence (as it is termed) by the defendant, after his expulsion of the plaintiff, shows that he must have continued in possession, and there is every presumption in the record that he held the actual possession at the time the summons issued. The substitution of a tenant, after the acts of force, will not defeat the action.—2 Bay's R. 355.

That the court did not err, as to the question of force necessary to sustain the action, see Clay's Digest 250 § 2; 9 Ala. 509; 18 Ala. 600.

The agreement between the parties to have their lots surveyed shows that the old line was undefined, and therefore the first charge of the court below was correct.

The third charge is not obnoxious to the objections made by plaintiff in error, and bears no analogy to that given by the court in Pharr & Beck v. Bachelor, 3 Ala. 237. In the charge complained of, there was no conclusion of fact from a question of law, nor any reference of the law to the decision of the jury. The charge is, in effect, that, upon the law as previously charged, if the jury believed from the evidence that the plaintiff was entitled to the possession, then the moving of the fence &c. was sufficient to maintain the suit. The charge may, perhaps, be an ungrammatical arrangement of words, but it is not a legal error.

The court properly refused to give the charge asked, as it had no sufficient predicate in the evidence.

CHILTON, C. J.—1. In order to sustain the proceeding of forcible entry and detainer, the plaintiff must show that the defendant has entered upon his premises *forcibly*, and that he actually detains the possession from him. The detainer need not be by the defendant in person; he may detain by another, to whom he delivers the possession, after he has obtained it by force, to be kept for him; nor does it make any difference that the person to whom he delivers it had been his tenant before the premises went into the possession of the plaintiff.

There was, therefore, no error in refusing to give the instruction prayed for by the defendant in the court below.

2. As to the first charge which the court gave, it is only necessary to remark that, if it is erroneous, that error consists in denying a right to the plaintiff to recover, if the parties purchased with a well defined and fixed boundary line between them, and now hold as they did then. It may well admit of question, whether, if the plaintiff had peaceable possession of land not included in the fixed boundary on his side, the defendant could forcibly enter and dispossess him, without being subject to this remedy. But this point is not before us. The error, if there be one, was in favor of the plaintiff in error, and consequently forms no ground of reversal, as no injury could properly have resulted to him from it.

The counsel supposes this charge to be abstract, as it assumes there was no defined line between the lots claimed by the parties; but we think the objection not well founded. It was for the jury to determine whether, if there had been a well defined boundary line between them, they would have contributed their money to have a survey made to ascertain the true line.

3. The circuit judge, however, mistook the law in charging the jury that, if they believed the plaintiff was entitled to the possession of the premises, then the removal of the plaintiff's fence by defendant, in the manner shown by the proof, was sufficient force to maintain the action. The bare removal of the fence, if the defendant had entered peaceably, would not convert his entry or detainer into a forcible one. The fence is a fixture, and in law considered as a part of the realty, and was not in the contemplation of the legislature when it was declared that " the carrying away of the *goods* of the party in possession" should constitute sufficient force to confer this remedy.—

We do not undertake to decide whether the evidence was or was not sufficient to show that the defendant entered forcibly. The proof upon this disputed fact was conflicting, and the weight of the testimony was a matter solely for the jury ; but this charge withdraws from them its consideration, and the court determines, as a matter of law, that the removal of the fence, as the same was shown by the proof, was sufficient force to entitle the plaintiff to his remedy, if he was entitled to the possession. This point is not unlike that decided in Botts v. Armstrong, 8 Por. Rep. 57, in which the court held, that "where the consideration of the evidence showing the circumstances connected with the entry of the defendant, is taken from the jury by the charge of the court, the cause must be remanded."

There was proof *conducing* to show that no such force or violence was used as is required to sustain this action, and however strongly it may have been opposed by other proof, still it was for the jury to determine its weight, and the court committed an error in virtually withdrawing it from them.

Let the judgment of the Circuit Court be reversed, and the cause remanded.

GIBBONS, J. did not sit in this case.